UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 3:01CR264(AVC) |
| | : | |
| JOHN CANOVA | : | OCTOBER 5, 2007 |

GOVERNMENT'S MEMORANDUM IN AID OF RESENTENCING

The Government submits this memorandum in aid of the resentencing scheduled for October 9, 2007, and in response to defendant's letter brief dated September 24, 2007 (hereinafter, "Def. Br.").

I.   INTRODUCTION

On April 7, 2004, after a jury had found the defendant guilty of a variety of substantive and conspiratorial crimes relating to his involvement in a multi-million dollar Medicare fraud, this Court sentenced the defendant to a one-year term of probation and a $1,000 fine. The government appealed the sentence, and the defendant cross-appealed his conviction.

The Court of Appeals affirmed the defendant's conviction but vacated this Court's probationary sentence and remanded for resentencing. See United States v. Canova, 412 F.3d 331 (2d Cir. 2005) ("Canova I"). The Court of Appeals agreed with the government that this Court's conclusion that no loss resulted from the defendant's conduct was erroneous. Id. Indeed, the Court held that "the record supports an intended loss of recoupment in an amount of $5 million, and such a loss should have been factored into the Guidelines considered by the district court in imposing sentence." Id. at 355.

On remand to this Court, the government argued that given the Court of Appeals' determination of an intended loss of $5 million, the district court's sentence on remand must include a period of incarceration to be a "reasonable" sentence under *Booker v. United States*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).

At resentencing on November 10, 2005, however, this Court re-imposed its original sentence of a one-year term of probation and $1,000 fine.

Once again, the government appealed this Court's sentence, and once again, the Court of Appeals vacated it. The Second Circuit squarely rejected each of the three new grounds on which the defendant had urged this Court to depart downward in imposing its sentence of probation. Canova II, 485 F.3d at 680-82 (rejecting departure for loss overstates the seriousness of the harm, departure for the victim's conduct, and departure for Raytel's restitution of $5 million).

Equally important, the Court of Appeals, while not making "an ultimate ruling on the reasonableness of the departure," Canova II, 485 F.3d at 684, clearly stated that the extent of the departure appeared unreasonable in light of the "significant aggravating factor" of "the $5 million loss that Canova intended." Id. The Court of Appeals noted that this Court's departure reduced "the tops of the [Guidelines] ranges by 51 months or 89 percent and resulted in a top that was only 11 percent of the original top." Id. The Court of Appeals further stated:

> Transcending the numbers in this case, however, is *the blunt fact that the effect of the departure and the resulting sentence was to treat Canova as though he had intended to cause no loss at all*. Canova's sentence was probation when the District Judge understood that no actual or intended loss had occurred, and it remained probation even after this Court's remand made clear that Canova had caused some actual loss and had intended a loss of $5 million.

Id. (emphasis added). The Court of Appeals remanded the case to this Court "for careful reconsideration in light of" its opinion.

The defendant appears not to have given the Court of Appeals' opinion careful consideration because he continues to invite this Court to rely upon yet more new dubious grounds for departure. Indeed, the defendant goes so far as to seek a departure on the basis that "[i]n this case, using intended loss as a measure of culpability overshoots the mark." Def. Br. at 7. But the Court of Appeals found that this Court abused its discretion in departing on the ground that the loss overstated the seriousness of the harm by *not* taking the $5 million intended loss into account, and seriously questioned whether any such departure "even applies to a case such as this." See Canova II, 485 F.3d at 680.

The defendant also asks this Court to do that which the Second Circuit expressed "doubt" could be done: justify a departure "by dividing its aggregate extent into component parts, each attributable to different grounds." Canova II, 485 F.3d at 683 (assessing "the departure by considering its aggregate extent"). This Court should reject the defendant's request to increase its original six-level departure for charitable works to nine levels, and to throw in another four levels for yet more new baseless departures, such as post-sentencing rehabilitation, which the defendant fails to mention is impermissible under U.S.S.G. § 5K2.19.

The government respectfully requests that this Court sentence the defendant to a term of incarceration and impose a punitive fine that is consistent with a $5 million intended loss and also consistent with a reasonable downward departure for his charitable works.

## II. BACKGROUND

### A. Factual Background

The factual background of this case is set forth in the two Court of Appeals' opinions and in the Pre-Sentence Report ("PSR"), ¶¶ 1-38. See Canova I, 412 F.3d at 335-343; Canova II, 485 F.3d at 675-76. The evidence admitted at trial, including the testimony of numerous persons at Raytel working directly under the defendant, established that the defendant engaged in a conspiracy to obstruct a federal audit and to defraud the United States, and made false statements to Medicare.

### B. Sentencing Guidelines Calculation

As set forth in the PSR, and as this Court agreed at the re-sentencing on November 10, 2005, the base offense level under U.S.S.G. § 2F1.1 is level 6. As the Court of Appeals held, the loss attributable to the defendant is $5,000,000, which increases the defendant's offense level by 13 levels, resulting in an offense level of 19. Two levels are added for more than minimal planning under 2F1.1(b)(2)(A), and two levels are added for role in the offense under § 3B1.1, resulting in a total offense level of 23. A total offense level of 23 with a criminal history category of I yields a guidelines range of 46 to 57 months' imprisonment and a fine of $10,000 to $100,000.

## III. ARGUMENT

### A. Downward Departures

The defendant moves for a departure on a number of grounds. None but the charitable works departure that this Court granted at the defendant's initial sentencing constitutes a valid basis for a departure in this case. At the re-sentencing hearing on November 10, 2005, and now

in anticipation of yet another re-sentencing hearing on October 9, 2007, the defendant keeps coming up with new grounds for departures because all but one of previous grounds have been rejected by the Court of Appeals. Each of the new grounds he has come up with for this re-sentencing has either been previously rejected by the Court of Appeals (intended loss overstates the serious of the offense), is legally impermissible under the Sentencing Guidelines (post-sentencing rehabilitation), or is unfounded in fact and law and has arisen solely due to the fortuity of the fact the defendant has been able to work while he has been sentenced and re-sentenced over the last four years (company's employees dependent on him). The Court should reject basing a departure on any ground other than charitable works.

### 1. Charitable Works

The government understands that at the original sentencing this Court granted the defendant a six-level departure based on public service, and that the Court of Appeals noted that the court could reconsider that decision in light of the defendant's higher guideline range at resentencing on remand. See Canova, 412 F.3d at 359 n.29. But, as discussed further below, the Court of Appeals also stated that it had "some doubt whether a departure can be justified by dividing its aggregate extent into component parts, each attributable to different grounds." Canova II, 485 F.3d at 683. Thus, the Court should heed the Second Circuit's doubt and reject the defendant's request to add three more levels to a charitable works departure (for a total of nine), and then add four more levels to the overall departure based on additional departure grounds. Def. Br. at 7, 9. The departure should be one that in the aggregate takes into account the defendant's charitable works but that also takes into account his serious offense conduct in attempting to deprive the Government from recovering $5 million in taxpayer money. Thus,

notwithstanding the validity of a departure here for charitable works, the extent of such a departure must be reasonable, and the court's ultimate sentence should provide for a period of incarceration. A sentence that does not include a period of incarceration will continue, as the Court of Appeals stated in Canova I, "to raise a question as to the reasonableness of the sentence imposed." Id. at 359; see Godding, 405 F.3d at 127.[1]

### 2.   Intended Loss

Remarkably, the defendant still seeks a departure based on the fact that the loss overstates the seriousness of the harm in this case. Def. Br. at 7. The defendant does not label his departure as such, but that is clearly what it is. What else is one to make of his statement that "a defendant who seeks to prevent the victim from recovering more than its actual loss is less culpable than one who inflicts an actual loss or prevents his victim from becoming whole." Def. Br. at 7. The defendant makes the nature of the departure he seeks clear when he argues that "[i]n this case, using intended loss as a measure of culpability overshoots the mark." Id.

The Court should decline the defendant's invitation to go down this road again and instead follow what the Second Circuit has concluded in its two opinions about the loss in this case: (1) that Canova intended a $5 million loss,[2] (2) that this significant aggravating factor must

---

[1] The defendant appears to seek an even greater departure than the original six levels this Court granted based in part on the DWI incident. Def. Br. at 7. But just as it is doubtful whether a departure can be justified by dividing its aggregate extent into component parts, see Canova II, 485 F.3d at 683, so too is it doubtful that an increase in the extent of a charitable works departure can be justified with every new good deed.

[2] See, e.g., Canova II, 485 F.3d at 680 (stating that the "Government had the right to recoup $5 million in payments made for noncompliant products, and Canova's conduct was designed to prevent this recoupment").

be taken into account in sentencing the defendant,[3] (3) that this Court exceeded its discretion in departing at the re-sentencing on the ground that the $5 million loss overstated the seriousness of the offense, and (4) that it is "questionable" whether any such "departure authority . . . even applies to a case such as this," where "it cannot be said that Canova's attempts to prevent Medicare from leaning of Raytel's noncompliance and obtaining recoupment were certain to fail." Canova II, 485 F.3d at 680. Clearly this Court should not depart on the basis that the loss overstates the seriousness of the offense – the very ground which the Court of Appeals rejected in Canova II – or on any variation resembling such a departure.

### 3.    Departure for Post-Sentencing Rehabilitation

Defendant also seeks a departure for post-sentencing rehabilitation. Def. Br. at 7. He states that more than four years have elapsed since the initial sentencing and "in those years [Canova] has shown himself to be fully rehabilitated." Id. For support, the defendant relies on United States v. Core, 125 F.3d 74, 77 (2d Cir. 1977), but Core is clearly no longer good law. As the Second Circuit subsequently held in Quesada-Mosquera v. United States, 243 F.3d 685, 686-87 (2d Cir. 2001), "no one may have post-sentencing rehabilitation considered upon resentencing" because the Sentencing Guidelines have been amended to provide that "[p]ost-sentencing rehabilitative efforts . . . are not an appropriate basis for a downward departure when resentencing the defendant . . . ." U.S.S.G. § 5K2.19.[4] Cf. United States v. Sims,

---

[3] See, e.g., Canova, 412 F.3d at 355 (holding that the intended loss was "$5 million, and such a loss should have been factored into the Guidelines considered by the district court in imposing sentence").

[4] Although the defendant fails to mention U.S.S.G. § 5K2.19, a district court case upon which he relies, United States v. Rosado, 254 F. Supp. 2d 316, 320-21 (S.D.N.Y. 2003) (concerning post-offense rehabilitation), makes clear that post-sentencing rehabilitation is

174 F.3d 911, 913 (8th Cir. 1999) (holding that there should be no valid basis for a departure for post-sentencing rehabilitation and stating that "we would be more than a little reluctant to embrace a rule that depended so heavily on a fortuity [*i.e.*, re-sentencing] for its operation"). The Court should not depart downward on this ground.

### 4.     Departure for Hardship on Employees

Canova asks this Court to depart downward because he "has assumed responsibility for the day-to-day operations of Miller Stuart, and the company's employees are dependent on him." Def. Br. at 8.  But the facts here resemble nothing like those in United States v. Milikowsky, 65 F.3d 4, 9 (2d Cir. 1995), and they simply do not rise to being "extraordinary" as required by Second Circuit case law.  See, e.g., United States v. Rattoballi,  (452 F.3d 127, 136 (2d Cir. 2005) (vacating departure based in part on Milikowsky because it is reserved for "extraordinary cases") (emphasis added).

Milikowsky concerned the principal of two business that would have failed if he were incarcerated and caused more than 200 employees to lose their jobs. Milikowsky, 65 F.3d at 9. The contrast with the facts in this case is stark.  Canova is an employee of the company.  He is not an owner or a principal, as in Milikowsky, or as in the other case upon which he relies, United States v. Somerstein, 20 F. Supp. 2d 454, 455 (E.D.N.Y. 1998).

Canova has worked at the company, Miller Stuart, for only 4 years.  Miller Stuart has been successfully operating for over 40 years, since 1966.  See www.millerstuart.com (print out of website attached hereto as Exhibit A).

---

forbidden under U.S.S.G. § 5K2.19.

Miller Stuart's workforce "fluctuates" and "ranges from 10 to 15 employees." Ltr. of Virginia Barton, July 24, 2007. This is a far cry from the 200 employees in Milikowsky who would have lost their jobs if the owner had been imprisoned, or even the 75 in Somerstein, 20 F. Supp. 2d at 460. See United States v. Barbera, 2005 WL2709112, at *14 (S.D.N.Y. 2005) ("The defendant in Milikowsky employed between 150 and 200 employees. Barbera, on the other hand, employs only four . . . . While Barbera's conviction and potential term of incarceration may lead to the closing of his practice and the loss of jobs for his employees, these adverse consequences in no way mirror those adverse consequences caused by the incarceration of the defendant in Milikowsky. As such, no downward departure will be granted to Barbera based on the potential adverse effects imposed on his four employees.").

Moreover, the President of the Miller Stuart, Mr. Arthur Hoffer, has been aware for as long as he has employed the defendant of the possibility that he could be sentenced to prison. He wrote this Court in connection with Canova's first sentencing in April 2003, and in connection with the resentencing in November 2005. He states in his most recent letter to the Court in connection with the resentencing scheduled for October 9, 2007, that it is his "intention to eventually turn my business over to John when I retire completely and his legal issues are completed," making clear that he has understood and continues to understand the contingencies at issue in employing Canova over these past several years. Ltr. of Arthur Hoffer, Aug. 1, 2007.

Moreover, there are ways in which this Court can greatly alleviate the impact that a period of incarceration for Canova may have on Miller Stuart. For instance, the Court can build in a reasonable period before Canova's surrender date to allow Miller Stuart to identify and integrate another individual to handle Canova's responsibilities while he is in prison. To the

extent that Canova's position is that there is no one in the New York metropolitan area who can handle his responsibilities while is incarcerated for a period of time, it is simply not credible.[5]

Finally, a departure here based on the impact Canova's incarceration may have on the other employees of Miller Stuart should be rejected on the same grounds that the Sentencing Commission has concluded that a departure for post-sentencing rehabilitation is impermissible. The fact that Canova has had the opportunity to put himself in a position to obtain such a departure on re-sentencing – a departure that was unavailable to him at sentencing – is fortuitous in that it was made available by the legal error that resulted in two re-sentencings. See U.S.S.G. ¶ 5K2.19, Commentary (noting that post-sentencing rehabilitation departure would "inequitably benefit only those who gain the opportunity to be resentenced de novo").[6] The Court should not depart on the grounds that Canova's incarceration will have an adverse effect on the other employees at his company.

### B. An Appropriate Sentence Under the Sentencing Guidelines and § 3553(a) Should Include A Term of Imprisonment and a Punitive Fine

It was the government's position on appeal in Canova II that the brevity and nominal financial impact of this Court's sentence at the last resentencing – probation and a $1,000 fine –

---

[5] As noted above, Canova is not the owner and has been at Miller Stuart for only the last 4 of the 41 years it has been in business. Prior to being hired by Miller Stuart 4 years ago, Canova had worked for Raytel Cardiac Services since 1989, not in the defense or aerospace industry. PSR at ¶ 69. Prior to that, he had worked for Eastern States Bankcard Association. Id. at ¶ 70.

[6] See also Sims, 174 F.3d at 912 (rejecting post-sentencing rehabilitation departure in part because "such a rule, in our opinion, contributes to the very disparity in sentencing that the Sentencing Reform Act of 1984 and its subsequent amendments . . . seek to prevent. . . . It creates a situation in which a few lucky defendants, simply because of a legal error in their original sentencing, receive a windfall in the form of a reduced sentence for good behavior . . . .").

was unreasonable in light of the applicable Guidelines range and the other factors set forth in Section 3553(a).  See Canova II, 485 F.3d at 682; see also United States v. Crosby, 397 F.3d 103, 114 (2d Cir. 2005).  The Court of Appeals did not make "an ultimate ruling on the reasonableness of the departure."  Canova II, 485 F.3d at 684.  But the Court of Appeals clearly stated that the extent of the departure appeared unreasonable in light of the "significant aggravating factor" of "the $5 million loss that Canova intended."  Id.  The Court of Appeals noted that this Court's departure reduced "the tops of the [Guidelines] ranges by 51 months or 89 percent and resulted in a top that was only 11 percent of the original top."  Id.[7]  The Court of Appeals further stated:

> Transcending the numbers in this case, however, is the blunt fact that *the effect of the departure and the resulting sentence was to treat Canova as though he had intended to cause no loss at all*.  Canova's sentence was probation when the District Judge understood that no actual or intended loss had occurred, and it remained probation even after this Court's remand made clear that Canova had caused some actual loss and had intended a loss of $5 million.

Id. (emphasis added).  The Court of Appeals again remanded the case to this Court "for careful reconsideration in light of" its opinion.

A review of the factors that this Court must consider under 18 U.S.C. § 3553(a) in carefully reconsidering its sentence in light of Canova II shows that any sentence that does not include a term of incarceration will continue to be an unreasonable one.  See Booker v. United States, 543 U.S. 220, 261 (2005).  The nature of the offense has been discussed in detail throughout the course of this case, but suffice it to say that the offense was a serious one: the

---

[7] See also United States v. Thurston, 456 F.3d 211, 219 (1st Cir. 2006) (vacating sentence of three months' imprisonment, which was "95% below the guideline recommendation," and remanding with instructions to impose not less than a 36-month term of imprisonment).

defendant defrauded Medicare by billing for services that his company did not render, and then obstructed a Medicare audit designed to recover $5 million of those fraudulent billings. A sentence of probation and a nominal fine is not just punishment, and it does not promote respect for the law – it undercuts it. The sentence here must include a significant term of incarceration to adequately recognize the nature and seriousness of the offense, to constitute just punishment and to promote respect for the law.

Nor would a sentence that does not include a significant period of incarceration afford adequate deterrence to criminal conduct, particularly health care fraud committed upon the government. See United States v. Thurston, 358 F.3d 51, 81 (1st Cir. 2004) (vacating 3-month sentence for $5 million fraud and stating that "[h]ealth care fraud is a serious crime and the federal interest in combating it is powerful"), cert. granted and judgment vacated in light of Booker v. United States, 543 U.S. 1097 (2005); United States v. Khan, 53 F.3d 507, 518 (2d Cir. 1995) (affirming upward departure where loss exceeded $1 million and stating that health care fraud compromises the integrity of our national health care system, and "the public's confidence in government" is undermined as a result).

In Canova II, the Court of Appeals noted that "Canova's sentence was probation when the District Judge understood that no actual or intended loss had occurred, and it remained probation even after this Court's remand made clear that Canova had caused some actual loss and had intended a loss of $5 million." Canova II, 485 F.3d at 684. The Court of Appeals then stated that "[a]lthough unusual circumstances might arise in which it would be unreasonable to impose the same sentence after a significant aggravating factor . . . factor had been taken into

consideration, such an outcome would require a persuasive justification." Canova II, 485 F.3d at 684.

No such persuasive justification is possible here given the facts and posture of this case as it now comes before this Court, regardless of whether the Court analyzes this case as it has in the past under a departure analysis or under a non-guidelines analysis. None of the departures requested by the defendant here, save the defendant's civic and charitable good works, justifies a departure at all. But even assuming *dubitante* that one of them does, the magnitude of the departure given must be justifiable under all of the circumstances in the case, and here no departure of a magnitude that would not include a term of incarceration can be justified. Although the Court of Appeals clearly provided this Court with the authority to depart downward based on the defendant's public service and good works, see Canova I, 412 F.3d at 359 & n.29, and left open the possibility of a greater departure (beyond the original 6 levels) on remand, id. at 359 & n.29, Canova II made clear that that authority was not a "road map" for a sentence that does not include a term of incarceration or a green light for this Court to impose the same sentence that the Court imposed previously.

A sentence that does not include a term of imprisonment, even with a valid departure or as a non-guidelines sentence, is not justifiable under the Sentencing Guidelines and 18 U.S.C. § 3553(a) for a defendant who attempted through false statements and other obstructive conduct to deprive the Medicare program of its right to recoup $5 million for fraudulent testing. See United States v. Godding, 405 F.3d 125, 127 (2d Cir. 2005) (per curiam) (vacating sentence of one-day term of imprisonment, remanding, and noting concern "that the brevity of the term of

13

imprisonment imposed . . . does not reflect the magnitude of the theft of nearly $366,000 over a five-year period").[8]

## Conclusion

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to a period of incarceration and impose a punitive fine.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


/s/Eric J. Glover
ERIC J. GLOVER
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct23923
157 Church Street
New Haven, Connecticut 06510
(203) 821-3700
Fax: (203) 821-3745
eric.glover@usdoj.gov

---

[8] The defendant notes that at oral argument in this case the government told the panel of the Court of Appeals that a reasonable sentence had to include at least one year's imprisonment. Def. Br. at 6 n.3. The defendant is correct; the government was responding to a question posed by Judge Newman about what in effect a reasonable sentence would have to include from the government's perspective. The government does not believe a one-year term of imprisonment to be an appropriate sentence in this case, but simply one that would lie at the outer limits of reasonableness as that term has been construed by the courts since Booker. Cf. Thurston, 456 F.3d at 220 ("In setting the minimum sentence that could withstand reasonableness review, we are not endorsing 36 months as the correct sentence for Thurston. Indeed, given the seriousness of Thurston's offense and his role as an organizer and lead implementer of the fraud, this court would be inclined to impose a sentence at or near the guideline recommendation if it were acting as the sentencing court. But our role here is only to determine the minimum sentence that could be considered reasonable on the present record.").

<u>CERTIFICATION OF SERVICE</u>

This is to certify that a copy of the foregoing has been sent by email and first class mail, postage prepaid, this 5th day of October, 2007 to:

Paul Shechtman, Esq.
Michael J. Grudberg, Esq.
Stillman & Friedman, P.C.
425 Park Avenue
New York, N.Y. 10022
pshechtman@stillmanfriedman.com
Mgrudberg@stillmanfriedman.com

Raymond Lopez
Senior U.S. Probation Office
915 Lafayette Blvd.
Bridgeport, CT 06604

/s/Eric J. Glover
ERIC J. GLOVER
ASSISTANT UNITED STATES ATTORNEY